*Eugene Murphy* and *C. H. McBride* for plaintiff.

*A. S. Humphreys* for defendant.

---

## ESTHER N. PILIPO AND ELIZABETH K. PILIPO *v.* NETTIE L. SCOTT.

### ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MAY 29, 1913.          DECIDED JUNE 19, 1913.

### ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

LANDLORD AND TENANT—*eviction.*

To constitute an eviction it is not necessary that there should be an actual physical expulsion of the tenant from the premises. Any act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises may be treated as an eviction. But, strict-

ly speaking, there can be no eviction from premises of which the tenant never acquired the possession.

SAME—*lease of undivided interest in land.*

A lease of an undivided portion of the interest of a member of a Hawaiian land hui in a tract of land owned by the hui constitutes the lessee a tenant in common with the members of the hui of the whole tract. But the lessee is not relieved from the payment of rent on the ground of eviction by the lessor because of the lessee's inability to obtain possession of certain specific portions of the common land which prior to and at the time of the execution of the lease were in the exclusive occupation of the lessor or other members of the hui pursuant to a custom of the hui.

OPINION OF THE COURT BY ROBERTSON, C.J.

The plaintiffs (defendants-in-error) brought an action in the circuit court against the defendant to recover rent alleged to be due and unpaid under a lease of certain land situate on the Island of Hawaii. The venue was changed from the third to the first judicial circuit and the case was tried jury waived. The claim was for $1113 for unpaid rent accruing during the period from March 1st, 1902, to September 1st, 1905. The defendant pleaded the general issue, and at the trial claimed an eviction on the part of the plaintiffs, which, it was contended, relieved her from the obligation to pay the rent. The circuit court found against the defendant's claim, and judgment was entered for the plaintiffs for the amount asked together with interest and costs aggregating the sum of $2026.09. The plaintiff-in-error seeks to have that judgment reviewed.

It appears that the lands known as Holualoa 1 and 2, situate in the district of North Kona, Island of Hawaii, were purchased many years ago by a Hawaiian hui composed of about seventy-five members, the original number of shares being 400 which subsequently was reduced to 353 through the retirement by purchase or otherwise of 47 shares. At the time of the execution of the lease in question the plaintiff, Elizabeth K. Pilipo, owned 56 of the shares, subject to the dower interest

therein of her mother, Esther N. Pilipo. The lands extend from the sea up into the mountain forests, comprising a total area of 7330 acres of which 6189 acres are situated above the upper government road. We understand it to have been admitted by counsel for the respective parties at the trial that the whole of the tract above the upper road had been leased by the hui prior to 1894. That part of the land therefore plays no part in this controversy.

The plaintiffs and the defendant executed an indenture dated August 21, 1894, whereby the former demised to the latter "fifty-three (53) shares out of their fifty-six (56) shares undivided of the land of Holualoa, in North Kona, Hawaii * * * but excepting and reserving therefrom to the lessors in the portion of the land makai of the upper government road, three (3) undivided shares of their fifty-six (56) shares, which said shares shall contain a house-lot near the sea adjoining the kuleana of H. N. Kahulu deceased; also the houses, pineapples and coffee planted by the lessors adjoining the new road running from Kailua mauka on both the upper and lower sides of said road; also other plants or trees planted by them; also the Koa and Ohia forest trees in the forest, excepting such as may of necessity be cut for the purposes of agriculture of the lessee. * * * * To have and to hold the said fifty-three (53) shares undivided * * * * for thirty years from and after the first day of September, A. D. 1894 * * *." The lessee covenanted, among other things, that "in entering upon the land makai of the upper government road not to enter or interfere with the parcels of the said land now occupied by members of the hui (hoa aina) either as house-lots or agricultural purposes in places heretofore planted by them," and "that if the said land of Holualoa shall be divided between the several share-holders during the term of this lease to exercise all reasonable diligence to secure for the lessors favorable locations for their said shares." And there was a covenant on the part of the lessors

that "in case the land shall be divided during the existence of
this lease then the said lessee shall have the sole power and
authority to control the division of the shares hereby leased."

The members ·of the hui were' tenants in common of the
lands of· Holualoa in proportion to their respective ownerships
of shares, so-called, each share representing· a 1/353 interest
in the land. Upon the execution of the lease, and by virtue
of it, the lessee became a tenant in common of the lands  of
Holualoa with the members of the hui, including Miss Pilipo,
in the proportion that the interest demised to her ·bore to the
whole.    We do not accept the view of counsel for the plaintiff-in-
error that the lease demised to the lessee an undivided 53/353
interest in the· land clear and that all the exceptions mentioned
in the lease were intended to be included in the three shares
or interests which were not demised.   We hold the proper con-
struction of the language of the lease to be that the lessors de-
mised· 53/56 of their interest in the common land but reserved
and excepted therefrom the houses, pineapples and coffee plant-
ed by the lessors adjoining the Kailua road, meaning the land
upon which the houses stood and upon which the pineapples
and coffee trees were growing, also the other plants or trees men-
tioned, including the forest trees.   The language purporting
to except and reserve three shares in the land makai of the
upper road which should include the house-lot near the sea was
used loosely and inaccurately, for the three shares referred to
were undivided interests in the whole land and were not .in-
cluded in the general description.   An .exception in a deed or
lease withholds from its operation some part or parcel of the
premises, which,· but for the exception, would pass by. the gen-
eral description.   A reservation is the creation ,of some new
right issuing out of the thing granted, and which .did not exist
before as an independent right, in behalf of the grantor or
. lessor.   The three shares were not included in the demise and
no statement that they were excepted or reserved was necessary

or appropriate. The language of the purported exception above referred to had no more effect than to designate the house-lot near the sea as being a portion of the premises which the lessors intended to occupy as against the lessee as a portion of their remaining interest in the premises. Neither party could rightfully claim, as against the other, the right to the exclusive possession of any part of the land . (except the pieces expressly excepted in the lease the right to the possession of which as against the lessee the lessors retained) unless by virtue of some regulation or custom of the hui. The members of huis such as the hui of Holualoa usually agree upon by-laws or regulations to govern the use and occupancy of the common property. The rules of this hui, if it has any, were not in evidence though there was testimony tending to show that there was at least a custom among the members to recognize and respect individual occupancy in that part of the land which was adapted to agricultural use. What terms or conditions, if any, were imposed on such occupancy did not appear.

Soon after obtaining the Pilipo lease the defendant secured leases of individual interests from other members of the hui who had been cultivating portions of the agricultural belt, and acquired altogether 85 shares. The defendant then undertook to take possession of. a portion of that belt containing an area of about 71 acres lying between the upper government road and the Kailua road, bounded on the north side by the J. C. Munn land (L. C. A. 3660) and on the south by the Scott trail, by erecting fences on such portions of the boundary of the tract as were not already fenced and by posting a notice at each of the four corners of the tract. This area contained coffee trees in bearing and was valuable on that account. The defendant proceeded to clear off the guava and other wild growth. An allotment of the agricultural belt separate from the rest of the common land lying above and below it would give to each hui share a little less than one acre. There was evidence tending to show

that there were other portions of the common land both agricultural and non-agricultural which were available for use, but the husband of the defendant who acted as her business agent, testified at the trial that "what we were working for at that time was coffee land."

In order to constitute an eviction it is not necessary that there should be an actual physical expulsion of the tenant from the premises.  Any act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises may be treated as an eviction, that is, it must be something more than a mere trespass.  *Holt* v. *Waialua Agl. Co.*, 18 Haw. 360. But, strictly speaking, there can be no eviction from premises of which the tenant never acquired the possession.  24 Cyc 1130, "An eviction consists in taking from the tenant some part of the demised premises of which he was in possession; not in refusing to put him in possession of something which, by the agreement, he ought to have enjoyed.  A tenant cannot be evicted from that which he never possessed." *Etheridge* v. *Osborn*, 12 Wend. 529, 532.

The evidence showed that Miss Pilipo owned a kuleana (L. C. A. 7746:1) containing 4.7 acres situated within and near the center of the tract which the defendant intended to take up, and Mr. Scott testified that Miss Pilipo expressly requested the defendant to occupy the land about the kuleana because she wished that upon the making of the contemplated partition of the lands her proportion of the agricultural land should be located adjoining her kuleana, and that the defendant acceded to her request.  Miss Pilipo admitted that she had entertained the desire attributed to her but she denied having made such request of the defendant.  The circuit court found the fact against the defendant's contention.

We shall now refer to the four specific instances each of which is contended to have constituted an eviction of the defendant.

During the coffee picking season of 1895 some Hawaiians claiming to act under the authorization of Mrs. Pilipo, against the objection of Mr. Scott, picked coffee from the trees growing on land of the hui between the makai end of the kuleana and the Kailua road. Upon complaint being made to the plaintiffs they took the ground that the trees in question were growing on land which was included in their right of occupancy by reason of the ownership of their three undivided interests in the hui lands. There was testimony tending to show that those coffee trees had been planted by Miss Pilipo's father; that there was a small house on the place in which the plaintiffs were in the habit of living during the coffee picking season; that the plaintiffs were in possession exercising ownership there long prior to the date of the lease to the defendant and, personally or through tenants, have been ever since; and that this possession was acquiesced in by the members of the hui. Assuming that the acts done by the defendant in essaying to take possession of the 71-acre tract were authorized by a rule or custom of the hui and that they constituted an effective possession of all that area which was not occupied by others, it could not have had the effect of securing for her the possession of any portions of the tract then held by the plaintiffs or other members of the hui. The circuit court presumably took the view that the defendant had never obtained possession of the area in question, and hence that the continued possession of the plaintiffs was not an eviction of the lessee. We cannot disturb the finding, supported as it was by substantial evidence. Possibly the area here involved was covered by the exception made in the lease of "the houses, pineapples and coffee planted by the lessors adjoining the new road." The area seems not to have extended all the way down to the road though we find no other location mentioned in the testimony which would answer the description. But the point was not urged and we deem it unnecessary to consider it since the ground above indicated supports a conclusion which appears to be sound and sufficient.

On April 22, 1895, Miss Pilipo leased to one Motonaga for the term of ten years her aforesaid kuleana and "all the coffee trees and berries thereof from and off my coffee trees now growing on a portion of the land on the makai side of my kuleana aforesaid, excepting the house-lot and the coffee trees thereon." There was evidence tending to show that the tenant took possession of the kuleana and some of the hui land immediately adjoining and nearly surrounding the kuleana, which, together with the area referred to in the discussion of the last point, covered four and three-fourths acres.  Miss Pilipo testified that she claimed the right to make that lease also by reason of the ownership of her three undivided interests in the common land. There was evidence tending to show that the coffee trees growing there had been planted by Miss Pilipo and her father before her, and that the land was occupied by the lessors before and at the time of the execution of the lease to the defendant with the acquiescence of the members of the hui.  This evidence went to show that the defendant never obtained possession of the area.   The circuit judge personally viewed the *locus in quo,* and the court below in finding there was no eviction in this connection said, "A very large percentage of the coffee trees gave evidence of considerable age, and while the fence line in some instances exceeds the limit of the lands occupied by the old trees, it was by a few feet only and the zigzag lines follwed very closely the outside limits of the old coffee clumps."   The finding of the circuit court must be allowed to stand.

In 1899 Miss Pilipo went into possession of a small piece of land fronting on the upper government road and situated within the 71-acre tract referred to, upon which she built a house.   This action of hers is claimed to have constituted an eviction.  This point, like the two preceding, involved a question of fact which turned upon disputed testimony and which it was the province of the circuit court to determine.    Miss

Pilipo testified (and she was corroborated by other witnesses) that her father had previously cultivated taro there; that after his death and at the time the lease was made to the defendant, a member of the hui by the name of Kauhaihao occupied the parcel and used it for the same purpose; that it had been fenced in; that upon her request Kauhaihao yielded possession to her; that the defendant never had either actual or constructive possession of the place; that some of the lumber used in the construction of the house was bought from Mr. Scott; and that no objection was made by the defendant to her occupancy of the place. This evidence, if true, and the circuit court found it to be so, showed that no eviction of the defendant took place.

The remaining point is that an eviction occurred by reason of the plaintiffs having interposed certain objections in the suit to partition the land. The facts, briefly, are as follows: In September, 1897, the defendant and her husband commenced a suit in equity for the partition of the lands of Holualoa 1 and 2, naming the members of the hui as respondents; the plaintiffs herein filed an answer in which they admitted the matters alleged in the bill of complaint and joined in the prayer for a partition of the premises; commissioners were appointed and reports were made to the court; a tract of 5189 acres above the upper government road was sold and a partial distribution of the proceeds was made; it was proposed to divide a strip near the sea as well as the agricultural belt in kind among the owners of shares in the hui, and to sell the intervening section of kula land; much time was consumed in making surveys and maps and the matter was further complicated by reason of changes in the ownership of interests; on July 15, 1905, the commissioner sold the section last above mentioned in lots at public sale to various parties, and made application to the court for confirmation of the sales; this application was opposed on several grounds which were set forth in a paper filed on behalf of thirty-four members of the hui, among them being Mrs.

Pilipo; Miss Pilipo's name does not appear as a party to the objection though she testified in this case that she was one of those who objected to the confirmation of the sales and that she had prompted others to make objection; she declared that she wanted the kula land divided in kind, and not sold; hearing upon the application and objection was postponed upon stipulation of counsel and no further action in the suit seems to have been taken. Counsel for the plaintiff-in-error contends that the "tying up the partition proceedings" by the defendants-in-error has prevented his client from obtaining the beneficial use of the premises to which the lease entitled her. Why the division of the agricultural land and beach property was not proceeded with has not been made clear. There is nothing in the record to suggest that it was due in any degree to any action of the defendants-in-error. We are unable to see any force in the claim that because the Pilipos preferred a division in kind of the kula land and joined in the objection to its sale the enjoyment of the use of the land by their lessee was obstructed or prevented. The act complained of constituted no eviction.

The non-payment of the rent having been conceded, and the only defense relied upon having failed of establishment, the plaintiffs were entitled to judgment for the sum claimed. The judgment is therefore affirmed.

*J. W. Cathcart* for plaintiff-in-error.

*N. W. Aluli* (*E. K. Aiu* with him on the brief) for defendants-in-error.