### DE FRIES v. SCOTT.

(Circuit Court of Appeals, Ninth Circuit. October 11, 1920. Motion to Vacate Judgment and Dismiss Writ of Error and Petition for Rehearing Denied, January 3, 1921.)

No. 3361.

1. **Appeal and error** ⚖➣84 (4)—**Judgment for sum certain is final judgment.**

The judgment of an appellate court, directing entry by the trial court of a judgment for a specific sum of money, with a proviso that, if certain judgments should be released by a party, the amount thereof should not be included in the judgment, *held* a final judgment, reviewable on writ of error.

2. **Associations** ⚖➣15 (1)—**Shareholder in Hawaii land "hui" holds subject to regulations adopted by hui.**

Under the law of Hawaii, while the members of a Hawaiian land hui (an association of persons in the ownership of land) hold the property as tenants in common, the adoption of regulations concerning the management of the hui and the use of the land constitutes them a voluntary association, and persons entering into the membership through the acquisition of shares in the hui, and those claiming under them, take their interest subject to such valid regulations as may have been adopted by the hui with reference to the holding of the land in severalty.

3. **Landlord and tenant** ⚖➣213 (5)—**Tenant, after long occupancy, not entitled to recover rent paid, on ground of breach of quiet enjoyment.**

A lessee of an undivided interest in land for a term of 30 years *held* not entitled, after more than 20 years, to abandon the lease and recover the rent paid thereunder, on the ground of a breach of covenant for quiet enjoyment, where the evidence showed that she had possession and use of all the land claimed by her under the lease, with the exception of certain small and comparatively unimportant pieces held by others of the tenants in common.

4. **Words and phrases—"Mauka."**

The Hawaiian word "mauka" means toward the mountain, or away from the sea.

5. **Words and phrases—"Makai."**

The Hawaiian word "makai" means toward the sea.

6. **Words and phrases—"Kuleana."**

The Hawaiian term "kuleana" means a small area of land, such as were awarded in fee by the Hawaiian monarch, about the year 1850, to all Hawaiians who made application therefor.

---

⚖➣For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the Supreme Court of the Territory of Hawaii.

Action at law by Nettie E. Scott against Elizabeth K. De Fries, née Pilipo. Judgment for defendant was reversed by the Supreme Court of the Territory of Hawaii, and defendant brings error. Reversed.

See 23 Hawaii, 739.

Noa W. Aluli, of Honolulu, T. H., for plaintiff in error.

John W. Cathcart, of Honolulu, T. H., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. This case was three times before the Supreme Court of the territory of Hawaii, to review the judgment (rendered June 27, 1918) in the last one of which the present writ of error was sued out.

[1] The motion filed by the defendant in error since the submission of the case, that the writ of error be dismissed, based on the contention that the judgment was not final, is denied. The judgment brought up for review reversed that of the circuit court, with directions to render one for specific sums of money, and was final in the strictest sense of that term. The fact that two of these sums were represented by specifically described unsatisfied judgments, with a provision in the decree of the Supreme Court of the territory to the effect that in the event the defendants to the action should file in the lower court "a full release of the plaintiff upon the two last-named unsatisfied judgments," the respective amounts thereof should not be included in the judgment directed, in no respect affected the finality of the latter—the provision regarding the filing of the release calling for and admitting of the exercise of no judgment, or even discretion, and manifestly for no exercise of any judicial function. The case is wholly different from that of Rumsey v. New York Life Insurance Co. et al., 267 Fed. 554, recently decided by this court, and from the decisions of the Supreme Court therein referred to.

[3] The action was for the alleged breach of the covenant for quiet enjoyment contained in a certain lease made August 21, 1894, by the plaintiff in error and her mother, Esther N. Pilipo, to the present defendant in error, her executors, administrators, and assigns, of—

"fifty-three (53) shares out of their fifty-six (56) shares undivided of the lands of Holualoa, in North Kona, Hawaii, * * * but excepting and reserving therefrom to the lessors in the portion of the land 'makai' of the upper government road three (3) undivided shares of their fifty-six (56) shares, which said shares shall contain a house lot near the sea adjoining the kuleana of H. N. Kahulu, deceased; also the houses, pineapple and coffee planted by the lessors adjoining the new road running from Kailua mauka on both the upper and lower sides of said road; also other plants or trees planted by them; also the koa and ohia forest trees in the forest, excepting such as may of necessity be cut for the purposes of agriculture of the lessee."

[4-6] The meaning of the Hawaiian words appearing in the lease are thus stated by one of the counsel in the case, which we take to be correct and here insert, there being no dispute in regard to that:

"(1) The word 'mauka' meaning toward the mountain, or away from the sea; (2) the word 'makai' meaning toward the sea; (3) the word 'hui' meaning in this record a number of persons combined together as partners

or tenants in common in ownership of a common property; and (4) the word 'kuleana' meaning in this record a small area of land, such as were awarded in fee, by the Hawaiian monarch, about the year 1850, to all Hawaiians who made application therefor."

The lease was for 30 years from and after September 1, 1894—

"subject to the payment of a rent of six dollars ($6.00) for each of said shares per annum and until the expiration of the lease now outstanding of the upper portion of the land (being the lease made by the hui of Gouveia), and for each year thereafter until the expiration of thirty (30) years of this lease fifteen dollars ($15.00) for each share. Said rent shall be paid as follows: The first year to be paid in advance, and after it shall be payable half yearly in advance on the first day of the half year, subject to the conditions hereinafter mentioned."

One of the covenants on the part of the lessors was that, if the rent should be duly paid and the covenants and conditions thereof duly observed, the lessee should—

"hold and possess the demised premises without hindrance of any person whomsoever, but it being understood that this demise is of undivided interests."

Among the covenants on the part of the lessee was this:

"In entering upon the land 'makai' of the upper government road not to enter or interfere with the parcels of the said land now occupied by members of the hui (Hoa-Aina) either as house lots or agricultural purposes in places heretofore planted by them."

The complaint in the present case was twice amended—a demurrer to the first amended one having been sustained. Scott v. Pilipo, 23 Hawaii, 349. The second amended complaint, being the one upon which the present action was tried, was held by the same court (23 Hawaii, 739) to state a cause of action in favor of the plaintiff and against the defendants thereto. It alleged, among other things, that upon the execution of the lease on the 21st day of August, 1894, the lessee paid one year's rent of the premises in advance, and on the 1st of the following September undertook to enter upon the demised premises, but was, by tenants by sufferance and at will of the lessors, prevented from obtaining such possession, and was not authorized by the terms of the lease to interfere with such tenants, and that the lessors have at all times neglected and refused to terminate such tenancies by sufferance and at will, so that at all times since the execution of the lease the lessee has been hindered and prevented by such tenants of the lessors from any possession, use, or enjoyment of the leased premises, or of any part thereof, notwithstanding the lessee has at all times been ready and willing to enter upon the premises, and to comply with all the terms and conditions incumbent upon her; that notwithstanding she was unable to secure any possession of the demised premises the lessee continued to pay the rents reserved in said lease for a period of five years, aggregating $1,500, and that thereafter the lessors, as plaintiffs in an action for rent under the said lease, secured a judgment in the circuit court of the First circuit against the lessee as defendant, in the sum of $2,201.65, which judgment the lessee, on or about January 2, 1914, was compelled to pay, together with costs of defending the said action in the sum of $350,

making a total sum of $2,551.65; that on or about June 25, 1915, in another action for rent under the said lease, the lessors as plaintiffs secured in the same court another judgment against the said lessee in the sum of $1,992.73, and on or about November 4 of the same year, in another action for rent under the said lease the lessors secured in the circuit court of the Third circuit a judgment against the lessee in the sum of $761, both of which last two judgments, although unpaid, are incontestable and must be paid by the said lessee; and because of the failure and neglect of the lessors to make available the demised premises for entry by the lessee, the latter elects to rely no longer on performance by the lessors, but to treat the lease as terminated, and under and by virtue of the obligation of indemnity assumed by the lessors under express covenant of quiet enjoyment of the leased premises, to demand the damages to which the plaintiff is entitled, aggregating $6,895.38, for which judgment was prayed, with interest.

It appears from the record, and from the various decisions referred to in the cause, that at the time of the execution of the lease the plaintiff, Elizabeth K. Pilipo, owned, subject to the dower interest therein of her mother, Esther N. Pilipo, 56 of the 353 shares of the lands known as "Holualoa No. 1 and 2," situate in the district of North Kona, island of Hawaii, acquired many years previously by a Hawaiian hui, extending from the sea up into the mountain forests, comprising a total area of 7,330 acres, of which 6,189 are situated above the upper government road.

In the present case the defendants, in addition to their denial of certain allegations, pleaded as an estoppel against the cause of action alleged in the second amended complaint of the plaintiff that, in an action brought by the defendants against her in the year 1906 to recover rent under the lease, the latter set up in defense the eviction by the lessors of the lessee from the leased premises. That case, between the same parties, came before the court below, where it was held that there was no such eviction for the reason that the plaintiff had not been in possession. Pilipo v. Scott, 21 Hawaii, 609. In deciding that case the court said, at page 612 et seq.:

"The members of the hui were tenants in common of the lands of Holualoa in proportion to their respective ownerships of shares, so called, each share representing a $1/353$ interest in the land. Upon the execution of the lease, and by virtue of it, the lessee became a tenant in common of the lands of Holualoa with the members of the hui, including Miss Pilipo, in the proportion that the interest demised to her bore to the whole. We do not accept the view of counsel for the plaintiff in error that the lease demised to the lessee an undivided $53/353$ interest in the land clear, and that all the exceptions mentioned in the lease were intended to be included in the 3 shares or interests which were not demised. We hold the proper construction of the language of the lease to be that the lessors demised $53/56$ of their interest in the common land, but reserved and excepted therefrom the houses, pineapples, and coffee planted by the lessors adjoining the Kailua road, meaning the land upon which the houses stood and upon which the pineapples and coffee trees were growing; also the other plants or trees mentioned, including the forest trees. The language purporting to except and reserve 3 shares in the land makai of the upper road, which should include the house lot near the sea, was used loosely and inaccurately, for the 3 shares referred to were un-

divided interests in the whole land, and were not included in the general description. An exception in a deed or lease withholds from its operation some part or parcel of the premises, which, but for the exception, would pass by the general description. A reservation is the creation of some new right issuing out of the thing granted, and which did not exist before as an independent right in behalf of the grantor or lessor. The 3 shares were not included in the demise, and no statement that they were excepted or reserved was necessary or appropriate. The language of the purported exception above referred to had no more effect than to designate the house lot near the sea as being a portion of the premises which the lessors intended to occupy as against the lessee as a portion of their remaining interest in the premises. Neither party could rightfully claim, as against the other, the right to the exclusive possession of any part of the land (except the pieces expressly excepted in the lease the right to the possession of which as against the lessee the lessors retained), unless by virtue of some regulation or custom of the hui. The members of huis, such as the hui of Holualoa, usually agree upon by-laws or regulations to govern the use and occupancy of the common property. The rules of this hui, if it has any, were not in evidence, though there was testimony tending to show that there was at least a custom among the members to recognize and respect individual occupancy in that part of the land which was adapted to agricultural use. What terms or conditions, if any, were imposed on such occupancy did not appear.

"Soon after obtaining the Pilipo lease, the defendant secured leases of individual interests from other members of the hui, who had been cultivating portions of the agricultural belt, and acquired altogether 85 shares. The defendant then undertook to take possession of a portion of that belt containing an area of about 71 acres lying between the upper government road and the Kailua road, bounded on the north side by the J. C. Munn land (L. C. A. 3660) and on the south by the Scott trail, by erecting fences on such portions of the boundary of the tract as were not already fenced, and by posting a notice at each of the four corners of the tract. This area contained coffee trees in bearing and was valuable on that account. The defendant proceeded to clear off the guava and other wild growth. An allotment of the agricultural belt, separate from the rest of the common land lying above and below it, would give to each hui share a little less than one acre. There was evidence tending to show that there were other portions of the common land, both agricultural and nonagricultural, which were available for use; but the husband of the defendant, who acted as her business agent, testified at the trial that 'what we were working for at that time was coffee land.'

"In order to constitute an eviction, it is not necessary that there should be an actual physical expulsion of the tenant from the premises. Any act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises may be treated as an eviction; that is, it must be something more than a mere trespass. Holt v. Waialua Agl. Co., 18 Hawaii, 360. But, strictly speaking, there can be no eviction from premises of which the tenant never acquired the possession. 24 Cyc. 1130. 'An eviction consists in taking from the tenant some part of the demised premises of which he was in possession; not in refusing to put him in possession of something which, by the agreement, he ought to have enjoyed. A tenant cannot be evicted from that which he never possessed.' Etheridge v. Osborn, 12 Wend. 529, 532.

"The evidence showed that Miss Pilipo owned a kuleana (L. C. A. 7746, 1) containing 4.7 acres situated within and near the center of the tract which the defendant intended to take up, and Mr. Scott testified that Miss Pilipo expressly requested the defendant to occupy the land about the kuleana, because she wished that upon the making of the contemplated partition of the lands her proportion of the agricultural land should be located adjoining her kuleana, and that the defendant acceded to her request. Miss Pilipo admitted that she had entertained the desire attributed to her, but she denied having made such request of the defendant. The circuit court found the fact against the defendant's contention."

The court then proceeded to consider the four specific instances, each of which it was contended by the plaintiff in error there constituted an eviction of the defendant to the action, and held that the evidence in each instance failed to show eviction, for the reason that it did not show that the lessee had ever been in possession of the premises, and accordingly affirmed the judgment. The claim upon which that action was based was for $1,113 for unpaid rent under the lease, accruing during the period from March 1, 1902, to September 1, 1905, and that decision of the Supreme Court of the Territory was rendered June 19, 1913.

Subsequently the lessee commenced a suit in equity for an injunction to restrain the lessors from enforcing the judgment last mentioned, and from collecting any other sums as rent under the lease, and to secure a judgment declaring the lease void. The trial court having granted the lessee the temporary injunction applied for, that case was taken to the court below and was decided December 11, 1913, and is reported in 21 Hawaii, 766, where the case was remanded to the circuit judge, with instructions to dissolve the temporary injunction, to sustain the demurrer to the complaint, and for such further proceedings not inconsistent with the opinion of the Supreme Court. In the opinion of the latter court, after referring to the law action commenced in April, 1906, by the lessors to recover the rent which had accrued under the lease for the period from March 1, 1902, to September 1, 1905, the court said:

"The facts above recited are disclosed by the bill, in which in addition to its direct allegations, the complainant refers to the records in the action for rent, declares that they are 'by reference incorporated herein,' and prays 'that the same be judicially noticed as if set out in full in the complaint.' The records in the equity suit (1901) for cancellation of the lease had been received in evidence in the action for rent, and are therefore to the same extent made a part of the bill. The same treatment is in the bill accorded to the records in the partition suit.

"The allegations of the bill are somewhat detailed and lengthy, but their substance may be briefly stated. While the complainant (lessee) confesses that she paid rent for a period of years, adding that she did so, 'relying on the expectation that she would secure possession by the partition proceedings,' and further confesses, indirectly by the showing of the records in the lessors' suit to cancel the lease, that as late as 1901 she was unwilling to have the lease canceled, and desired the tenancy continued, and says that upon the execution of the lease she 'essayed to enter, by completing the boundary fences (walls), clearing away the guavas, and otherwise exercising rights of possession' on the 71-acre tract referred to in our opinion in the action for rent [21 Hawaii, 609], she alleges that she 'was completely defeated in her attempt to enter or to secure possession of any part of the lands represented by the demised 53 shares, and ever since has been kept from possession of all and every part of the land so attempted to be entered upon' (meaning evidently the 71-acre tract), and that 'there was no other part of the hui lands upon which complainant could then have entered under the terms of said lease, without interfering with the proscribed rights, set out in the terms of said lease, of other members of the hui.' In other words, her complaint is that at no time since the execution of the lease has she been able to obtain possession of any of the demised property.

"It is clear that ordinarily a lessee's failure to obtain possession, or a lessor's failure to deliver possession, in so far as it is a violation of the lessor's duty under the lease, absolves the lessee from his obligation to pay rent, and is available as a defense at law in an action for the recovery of the

rent. Kaale v. Petero, 7 Hawaii, 180; 18 A. & E. Ency. Law, 325; 24 Cyc. 1145–1147; 1 Taylor, Landlord and Tenant, § 378. This rule is recognized by the complainant. To avoid its effect she claims in the bill and in argument, and no other excuse is advanced, that the defense was not available to her in the action at law, 'for the reason that defendant' (now complainant) 'in good faith claimed to have been evicted and the defense of not having entered would have been inconsistent therewith,' that the trial court found that there had been no eviction, and that this court 'held the finding of the trial court to mean that, when defendant essayed to enter upon said block of 71 acres, her effort had failed, and that defendant had never been in possession of any part of said 71 acres,' and refused to disturb the finding on the ground that there was evidence to sustain it.

"Concerning this contention we have no hesitation in saying that the trial court did not find that lessee had never been in possession of the 71-acre tract, or of any part of the ahupuaa other than the three comparatively small pieces above referred to, and that this court did not hold that the trial court did so find. The opinion filed by the lower court shows that the only defense there offered and considered was that the lessors 'by taking possession of portions of the designated land' (meaning portions of the 71-acre piece) 'and by sub-leasing other portions to a Japanese tenant' had been guilty of an eviction and that the only finding was that 'there has been no eviction.' The opinion leaves no room for the inference that the court found an utter lack of possession of any part of the demised property. This court, likewise, confined itself to a consideration of the sufficiency of the evidence, under the law, to support the finding that there had been no eviction with reference to the three small pieces of land within the 71-acre tract, and of the soundness of the contention that an eviction occurred by reason of certain acts of the lessors in the course of the suit for partition. We held that there was evidence sufficient to support a finding that the lessee had not had possession of the three pieces specifically mentioned, but we did not consider the state of the evidence relating to any supposed absence of possession by the lessee of any other parts of the land. The judgment was affirmed, because 'the only defense relied upon' had failed of establishment. Ante, 618.

"In saying that 'the circuit court presumably took the view that the defendant had never obtained possession of the area in question' (ante, 615), and that there was evidence to support the finding, reference was being made to the piece of land which was the only subject of discussion in that paragraph, to wit, the 'land of the hui between the makai end of the kuleana and the Kailua road' (11, 4 and 5, p. 615). Almost immediately following the sentence in which the words 'the area in question' occur are the statements that 'possibly the area here involved was covered by the exceptions made in the lease of "the houses, pineapples, and coffee planted by the lessors, adjoining the new road,"' and that 'the area seems not to have extended all the way down to the road.' These quotations show unmistakably that 'the area' was simply a piece within the 71 acres, and not, as the complainant contends, the whole tract, and, of course, not the whole ahupuaa. In the defense at law there was no claim of an eviction from all of the demised property."

The evidence and records in all of the actions between the parties respecting the lease in question, as well as the suit for the partition of the hui lands, were made a part of the record in the present action. The trial court, a jury having been waived, filed its decision in favor of the defendants to the action, upon which judgment was entered, and, the case having been taken by appeal to the court below, the judgment was reversed, and the cause remanded to the circuit court, with instructions to render judgment—

"in favor of the plaintiff and against the defendants, and to assess plaintiff's damages (she having waived her claim to damages for the value of the unexpired term of the lease) as per items following: (1) The amount of

that certain judgment in favor of defendants and against plaintiff for the sum of $2,261.65, rendered in the circuit court of the First circuit of the territory of Hawaii, on or about January 2, 1914, and which plaintiff was compelled to pay, together with accrued costs thereon and accrued interest thereon from date of judgment; (2) the amount of that certain judgment rendered in the circuit court of the First circuit of the territory of Hawaii, on or about June 25, 1915, in favor of the defendants and against the plaintiff, for the sum of $1,992.73, and which is now unsatisfied, together with the accrued interest and costs thereon; and (3) the amount of that certain judgment rendered on or about November 4, 1915, in the circuit court of the Third circuit of the territory of Hawaii, in favor of the defendants and against the plaintiff for the sum of $761, and which is unsatisfied, together with all accrued interest and costs thereon. But if the defendants herein shall file in the trial court a full release of the plaintiff upon the two last-named unsatisfied judgments the respective amounts thereof, with accrued interest and costs, shall not be included in the amount of damages awarded to the plaintiff; otherwise, the same to be included in the damages awarded to plaintiff."

[2] We are unable to sustain this judgment, in view of the evidence in the cause and of the previous decisions of the court, to which reference has been made. By them we understand that it is not only the law of the present case, but the well-settled law of Hawaii, that while members of a Hawaiian land hui hold the property as tenants in common, the adoption of regulations concerning the management of the hui and the use of the land constitutes them a voluntary association, and that persons entering into membership through the acquisition of shares, so called, in the land, and those claiming under them, take their interest therein subject to such valid regulations as may have been adopted by the hui with reference to the holding of the land in severalty.

The court below in its opinion in the present case says that in the action commenced by the lessors in April, 1906, to recover rent due under the lease, it was decided that—

"The acts of the defendants here relied on to establish eviction were not sufficient, for the reason that plaintiff had not been in possession, and therefore had not been evicted. This decision was in an action between the parties to this action, and adjudicated the question of possession by plaintiff up to the time of the commencement of that action. Pilipo v. Scott, 21 Hawaii, 609, 766. We have been unable to find any evidence in the record showing that since April, 1906, the plaintiff has been placed in possession of the demised premises or any thereof. In the former action, commenced in 1906, which was finally tried in the circuit court in 1912 and affirmed by this court in 1913 (21 Hawaii, 609), the only defense against the claim of the lessors for rent made by the lessee (plaintiff here) was that of eviction, and it was decided that the lessee had not been in possession and therefore had not been evicted, for which reason the defense failed. The court below in its decision correctly said: 'I do not think that the plaintiff's contention that it was agreed that she was to have the use and occupancy of said definite area was seriously disputed upon the trial of the case. On the authority of Scott v. Pilipo, 23 Hawaii, 352, I think such an agreement could be legally made. We will therefore consider this case as though the lease by its terms was for a specific area.'"

As will be seen from the decision of the case between these parties, reported in 21 Hawaii, 609, it was held in effect that—

"A lease of an undivided portion of the interest of a member of a Hawaiian land hui in a tract of land owned by the hui constitutes the lessee a tenant in common with the members of the hui of the whole tract. But the lessee is not relieved from the payment of rent, on the ground of eviction by the lessor, because of the lessee's inability to obtain possession of certain specific portions of the common land which prior to and at the time of the execution of the lease were in the exclusive occupation of the lessor or other members of the hui pursuant to a custom of the hui."

And while it is entirely true that the court also held in that case that the eviction set up by the lessee as a defense to that action was not sustained, for the reason that the evidence there given, failed to show that the lessee was in possession of the leased property, the same court, in the subsequent equity suit between the same parties (21 Hawaii, 766), brought by the lessee to restrain the lessors from enforcing the judgment for rent entered by direction of the Supreme Court in the action for rent, explained and very materially limited the language of its previous opinion. This very plainly appears from the following excerpts from the quotation hereinbefore made from that opinion:

"Her [lessee's] complaint [in the equity suit] is that at no time since the execution of the lease has she been able to obtain possession of any of the demised property. * * * She claims in the bill and in argument, and no other excuse is. advanced, that the defense was not available to her in the action at law, 'for the reason that defendant [now complainant] in good faith claimed to have been evicted and the defense of not having entered would have been inconsistent therewith,' that the trial court found that there had been no eviction, and that this court 'held the finding of the trial court to mean that when defendant essayed to enter upon said block of 71 acres her effort had failed, and that defendant had never been in possession of any part of said 71 acres,' and refused to disturb the finding on the ground that there was evidence to sustain it. Concerning this contention we have no hesitation in saying that the trial court did not find that lessee had never been in possession of the 71-acre tract, or of any part of the ahupuaa other than the three comparatively small pieces above referred to, and that this court did not hold that the trial court did so find. The opinion filed by the lower court shows that the only defense there offered and considered was that the lessors, 'by taking possession of portions of the designated land' (meaning portions of the 71-acre piece) 'and by subleasing other portions to a Japanese tenant,' had been guilty of an eviction, and that the only finding was that 'there has been no eviction.' The opinion leaves no room for the inference that the court found an utter lack of possession of any part of the demised property. This court, likewise, confined itself to a consideration of the sufficiency of the evidence, under the law, to support the finding that there had been no eviction with reference to the three small pieces of land within the 71-acre tract and of the soundness of the contention that an eviction occurred by reason of certain acts of the lessors in the course of the suit for partition. We held that there was evidence sufficient to support a finding that the lessee had not. had possession of the three pieces specifically mentioned, but we did not consider the state of the evidence relating to any supposed absence of possession by the lessee of any other parts of the land. The judgment was affirmed because 'the only defense relied upon' had failed of establishment. * * * In saying that 'the circuit court presumably took the view that the defendant had never obtained possession of the area in question,' * * * and that there was evidence to support the finding, reference was being made to the piece of land which was the only subject of discussion in that paragraph, to wit, the 'land of the hui between the makai end of the kuleana and the Kailua road.' * * * Almost immediately following the sentence in which the words 'the area in

question' occur are the statements that 'possibly the area here involved was covered by the exceptions made in the lease of 'the houses, pineapples, and coffee planted by the lessors adjoining the new road,' and that 'the area seems not to have extended all the way down to the road.' These quotations show unmistakably that 'the area' was simply a piece within the 71 acres, and not, as the complainant contends, the whole tract, and, of course, not the whole ahupuaa. In the defense at law there was no claim of an eviction from all of the demised property." Scott v. Pilipo, 21 Hawaii, 769, 770, 771.

[3] Moreover, we are of the opinion that the evidence itself shows that the lessee entered into the possession of the leased property, with the exception of the few small and comparatively unimportant pieces held by or under other members of the hui, and that this fact appears from the testimony of the husband and agent of the lessee. Having enjoyed the fruits of the leased premises, to permit the lessee, near the end of the long life of the lease, as is done by the judgment here in question, to recover from the lessors rent money theretofore paid by her under and by virtue of the lease, as well as the amount of the unpaid judgments against her for rent, with interest and costs, is, in our opinion, unsupported in principle or by authority, and is fundamentally wrong.

The judgment of the Supreme Court of the Territory is reversed and that of the circuit court affirmed, with costs to the plaintiff in error.